IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL PARCRAY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SHEA MORTGAGE INC., et al.,<br><br>             Defendants. | No. CV-F-09-1942 OWW/GSA<br><br>MEMORANDUM DECISION AND ORDER GRANTING  DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT IN PART WITH PREJUDICE AND IN PART WITH LEAVE TO AMEND (Docs. 23 & 25) |

Plaintiff Rachel Parcray has filed a First Amended Complaint ("FAC")against Defendants Shea Mortgage, Inc. ("Shea")  Aurora Loan Services, Inc ("ALS"), Mortgage Electronic Registrations Systems ("MERS"), and Does 1-10.[1]

Plaintiff, a resident of Vallejo, California, alleges that she owns real property located at 1519 Phlox Drive, Patterson, California ("Subject Property").  The FAC alleges:

_____

[1]In her pleading, Plaintiff spells her surname "Parcray." However, on the Deed of Trust and in filings in the Bankruptcy Court, her surname is spelled "Pacray."

1

5.   Plaintiff purportedly entered into a loan repayment and security agreement on or about December 1, 2006 with Defendant SHEA ..., which required Plaintiff to repay a loan of $462,550.00 to SHEA.   SHEA purportedly held a First Deed of trust [sic] on the Subject Property.   The loan program consisted on an Interest Rate of 5.250% and an Annual Percentage Rate of 6.697%.   The index used to calculate the loan was a one (1) Year Libor Index with a value of 5.300%; a margin of 2.250%; and a cap of 10.250%.

Defendant Shea is alleged to be the original mortgage lender;

Defendant ALS is alleged to be the current mortgage servicer of

the loan; Defendant MERS is alleged to be the beneficiary for the

loan.  As "General Allegations," the FAC alleges:

11.   On November 27, 2006, PLAINTIFF executed a Deed of Trust with the original lender, Shea Mortgage, Inc. ('SHEA') securing a loan on [the Subject Property].

12.   MERS was the alleged beneficiary under the Deed of Trust.   The Deed of Trust was recorded on December 1, 2006 in the Stanislaus County Recorder's Office as Document Number 2006-1075522-00.

13.   Plaintiff alleges on information and belief that Shea ... did not authorize MERS to assign the Note to defendant ALS or any other entity.

14.   On March 17, 2009, a Notice of Default was recorded.   The NOD states that the beneficiary under the Deed is "Mortgage Electronic Registration Systems, Inc. as Nominee for Shea Mortgage Inc.'

15.   On April 19, 2009, MERS caused a Substitution of Trustee to be recorded wherein MERS stated it was the present beneficiary under the Deed.

16.   On June 22, 2009, a Notice of Trustee Sale was recorded.

2

17.  Plaintiff alleges that at no time prior to issuing the notice of default did Shea Mortgage Inc., MERS or Aurora Loan Service or anyone acting on its behalf contact plaintiff to discuss options to pay the loan or to access plaintiff's financial situation.

18.  Each defendant 'proceeded to notice the default and pending sale of the Subject Property without (1) evaluating plaintiff's financial condition regarding foreclosure avoidance; (2) advising plaintiff of her statutory right to meet with Defendants regarding such foreclosure avoidance; and (3) advising plaintiff of the toll-free federal Department of Housing and Urban Development ('HUD') telephone number regarding counseling opportunities to avoid the subject foreclosure.'

19.  Plaintiff is willing and able to tender the face value of the note minus equitable set off to the true holder of the underlying promissory note whom plaintiff believes to be Shea Mortgage.

20.  Plaintiff alleges on information and belief, that Aurora Loan Servicing does not have possession of the original note and cannot inform the terms of the promissory note.

21.  Plaintiff's loan was recorded during the period of January 1, 2003, to January 1, 2008, inclusive, and is secured by residential real property.

22.  The loan at issue is the first deed of trust that the subject property secures.

23.  Plaintiff was occupying the underlying property as her principal residence at the time the loan became delinquent.

24.  Plaintiff has not surrendered the property, as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

25.  Plaintiff has not contracted with any

3

organization, person, or entity whose primary business is advising people who have decided to leave their homes regarding how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

26.  A case had not be filed by me under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code at the time the Notice of Trustee Sale was recorded.

27.  Plaintiff filed bankruptcy on August 21, 2009 and can repay the party entitled to enforce the promissory note through her chapter 13 plan.

28.  Plaintiff alleges that Shea Mortgage Inc.'s licensed [sic] was suspended by the State of California on or about December 24, 2009 and by the Franchise Tax Board on or about January 4, 2010.

29.  Plaintiff alleges that TILA violation and the creditor's debt arose from the same transaction.

30.  Plaintiff is asserting the TILA violation as a set off.

31.  The Notice of Trustee Sale failed to comply with Civil Code Sections 2923.5 and 2932.5.

32.  Defendant ALS is attempting to enforce the terms of the Note and have not provided plaintiff with any evidence that they are in physical possession of the original Note.

Defendants ALS and MERS move to dismiss the FAC for failure to state a claim upon which relief can be granted.[2]

A.   GOVERNING STANDARDS.

_____

[2]Defendant Shea also has filed a motion to dismiss, which is set for hearing on June 21, 2010.  Because the rulings herein apply to Defendant Shea, this Memorandum Decision resolves its motion as well.

4

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic, id.* at 555.  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully, *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....

> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework

> of a complaint, they must be supported by
> factual allegations.  When there are well-
> pleaded factual allegations, a court should
> assume their veracity and then determine
> whether they plausibly give rise to an
> entitlement to relief.

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

B.  <u>REQUEST FOR JUDICIAL NOTICE</u>.

Defendants request the Court take judicial notice of the following documents in resolving their motions to dismiss:

> Exhibit A - Deed of Trust executed on
> November 27, 2006 and recorded on December 1,
> 2006 in the Stanislaus County Recorder's
> Office as Document Number 2006-017552-00;

> Exhibit B - Grant Deed recorded on December
> 1, 2006 in the Stanislaus County Recorder's
> Office as Document Number 2006-175519-00;

> Exhibit C - Notice of Default recorded on
> March 17, 2009 in the Stanislaus County
> Recorder's Office as Document Number 09-
> 26272;

> Exhibit D - Substitution of Trustee recorded
> on April 29, 2009 in the Stanislaus County
> Recorder's Office as Document Number 09-
> 41622;

7

Exhibit E - Notice of Trustee's Sale recorded on June 22, 2009 in the Stanislaus County Recorder's Office as Document Number 09-61725;

Exhibit F - Trustee's Deed Upon Sale recorded on July 15, 2009 in the Stanislaus County Recorder's Office as Document Number 09-09515.

Plaintiff requests the Court take judicial notice of Defendant Shea's motion to dismiss filed on March 24, 2010 (Doc. 25). Defendant Shea's motion to dismiss is set for hearing on June 21, 2010.

The parties do not object to the respective requests for judicial notice. The Court may take judicial notice of matters of public record pursuant to Rule 201, Federal Rules of Evidence, and the Court may take judicial notice of its own records. The respective requests for judicial notice are granted.

C.   <u>FIRST CAUSE OF ACTION</u>.

The First Cause of Action is for declaratory relief against ALS. Plaintiff alleges that an actual controversy exists between Plaintiff and Defendants concerning the respective rights and duties under the Note:

34. ... (a) PARCRAY contends that she has a contractual obligation with SHEA and that SHEA is the holder of the original Note and beneficiary under the deed. PARCRAY has no contractual agreement with defendant ALS. Neither ALS nor MERS are the beneficiary under the Deed. SHEA is no longer a legal entity and is incapable of transferring the Note or Deed to defendant ALS. As such, the Note is unenforceable by ALS and the Deed of Trust clouds plaintiff's title to the real property ... PARCRAY specifically contends that defendants do not have possession of the

8

original promissory note and as a result, defendant's [sic] interest in the subject property is not perfected.  PARCRAY further contends that the Notice of Default and Notice of Trustee Sale are defective in that defendant's [sic] failed to comply with the provisions of C.C. §§ 2923.5 and 2932.5. (b) ALS contends that the deed of trust is enforceable notwithstanding the fact that there is no original promissory note. Defendants further contend that defendant's [sic] complied with C.C. §§ 2923.5 and 2932.5.

35.   PARCRAY desires a judicial determination and declaration of PARCRAY's and ALS's respective rights and duties; specifically, that the December 6, 2009 deed of trust is ineffective and a legal nullity.  That any debt claimed by defendants is unsecured.  A declaration is appropriate at this time so that PARCRAY and ALS may determine their rights and duties that are the subject of this dispute.

Defendants move to dismiss the First Cause of Action for declaratory relief.

28 U.S.C. § 2201(a) provides:

In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202 provides that "[f]urther or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

It is well-settled that the Declaratory Relief Act's "actual

controversy" requirement is the same as the case or controversy requirement of Article III of the United States Constitution. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981), citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-240 (1937).  The Act requires no more stringent showing of justiciability than the Constitution does. *Societe de Conditionnement*, 655 F.2d at 942.  Issuing a declaratory judgment in a case without an actual controversy is an advisory opinion, which is prohibited by Article III. *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir.1990):

> A 'controversy' in this sense must be one that is appropriate for judicial determination ... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot ... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests ... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna,* 300 U.S. at 240-241.  A controversy exists justifying declaratory relief only when the challenged government activity has not disappeared or evaporated, and, "by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties."  *Headwaters, Inc. v. Bureau of Land Management*, 893 F.2d 1012, 1015 (9th Cir. 1999).

The granting of declaratory relief "'rests in the sound

discretion of the [] court exercised in the public interest.'"
*Natural Resources Defense Council, Inc. v. U.S. E.P.A.,* 966 F.2d
1292, 1299 (9th Cir.1992).  The guiding principles are whether a
judgment will clarify and settle the legal relations at issue and
whether it will afford relief from the uncertainty and
controversy giving rise to the proceedings.  *McGraw-Edison Co. v.*
*Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.), *cert.*
*denied*, 385 U.S. 919 (1966).  A declaratory judgment may be the
basis of further relief against the adverse party.  *Public*
*Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 245
(1952).  As explained in *Horn & Hardart Co. v. National Rail*
*Passenger Corp.*, 843 F.2d 546, 548 (D.C.Cir.1988):

> The 'further relief' provision[] of ... [the]
> federal declaratory judgment statute[]
> clearly anticipate[s] ancillary or subsequent
> coercion to make an original declaratory
> judgment effective ... Section 2202's
> retained authority, commentators have noted,
> 'merely carries out the principle that every
> court, with few exceptions, has inherent
> power to enforce its decrees and to make such
> orders as may be necessary to render them
> effective.'

"The existence of another adequate remedy does not preclude
a declaratory judgment that is otherwise appropriate."  Rule 57,
Federal Rules of Civil Procedure.

Defendants argue that the First Cause of Action fails
because Plaintiff seeks only to redress past grievances, rather
than to obtain a declaration of her future rights.  Defendants
note that the foreclosure sale of the Subject Property occurred
on July 8, 2009, before Plaintiff commenced this action on August

11

24, 2009 in the Stanislaus County Superior Court.

Defendants further argue that Plaintiff cannot assert a violation of California Civil Code § 2923.5.

California Civil Code § 2923.5 provides:

> (a)(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

> (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore option for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur with 14 days.  The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.  In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.  Any meeting may occur telephonically.

> (b) A notice of default filed pursuant to Section 2924 shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required pursuant to subdivision (h).

Defendants argue that Plaintiff's alleged violation of Section 2923.5 is preempted by the Home Owners Loan Act ("HOLA"),

12 U.S.C. § 1464.

Congress enacted HOLA "to charter savings associations under federal law," *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 559 (9th Cir.2002), *cert. denied*, 538 U.S. 1069 (2003), and "to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices,'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 160-161 (1982). HOLA and its regulations are a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir.1979), *aff'd*, 445 U.S. 921 (1980). "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America, id.,* 309 F.3d at 559.

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008); 12 U.S.C. § 1464. OTS promulgated 12 C.F.R. § 560.2 as a preemption regulation, which "'has no less preemptive effect than federal statutes.'" *Silvas, id.,* 514 F.3d at 1005.

Section 560.2(a) provides:

> OTS is authorized to promulgate regulations
> that preempt state laws affecting the
> operations of federal savings associations

13

when deemed appropriate to facilitate the
safe and sound operation of federal savings
associations, to enable federal savings
associations to conduct their operations in
accordance with the best practices of thrift
institutions in the United States, or to
further other purposes of the HOLA.  To
enhance safety and soundness and to enable
federal savings associations to conduct their
operations in accordance with best practices
(by efficiently delivering low-cost credit to
the public free from undue regulatory
duplication and burden), OTS hereby occupies
the entire field of lending regulation for
federal savings associations.  OTS intends to
give federal savings associations maximum
flexibility to exercise their lending powers
in accordance with a uniform federal scheme
of regulation.  Accordingly, federal savings
associations may extend credit as authorized
under federal law, including this part,
without regard to state laws purporting to
regulate or otherwise affect their credit
activities, except to the extent provided in
paragraph (c) or § 560.10 of this part.  For
purposes of this section, 'state law'
includes any state statute, regulation,
ruling, order, or judicial decision.[3]

Section 560.2(b) provides:

Except as provided in § 560.110 of this part,
the types of state laws preempted by
paragraph (a) of this section include,
without limitation, state laws purporting to
impose requirements regarding:

...

(10) Processing, origination,
servicing, sale or purchase of, or
investment or participation in,
mortgages.

....

Section 560.2(c) provides:

---

[3]12 C.F.R. § 560.110 pertains to "most favored lender usury
preemption" and has no apparent relevance to this action.

14

State laws of the following types are not
preempted to the extent that they only
incidentally affect the lending operations of
Federal savings associations or are otherwise
consistent with the purposes of paragraph (a)
of this section:

...

(2) Real property law

...

(6) Any other law that OTS, upon
review, finds:

(i) Furthers a vital state
interest; and

(ii) Either has only an incidental
effect on lending operations or is
not otherwise contrary to the
purposes expressed in paragraph (a)
of this section.

As noted by the Ninth Circuit in *Silvas*, 514 F.3d at 1005,

OTS has outlined a proper analysis in evaluating whether a state

law is preempted under Section 560.2:

When analyzing the status of state laws under
§ 560.2, the first step will be to determine
whether the type of law in question is listed
in paragraph (b).  If so, the analysis will
end there; the law is preempted.  If the law
is not covered by paragraph (b), the next
question is whether the law affects lending.
If it does, then, in accordance with
paragraph (a), the presumption arises that
the law is preempted.  This presumption can
be reversed only if the law can clearly be
shown to fit within the confines of paragraph
(c).  For these purposes, paragraph (c) is
intended to be interpreted narrowly.  Any
doubt should be resolved in favor of
preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996).

Case law supports Defendants' assertion that Section 2923.5

15

1  is preempted by HOLA.  *See Murillo v. Aurora Loan Services, LLC,*
2  *2009 WL 2160579 at \*4 (N.D.Cal., July 17, 2009)*("Here, Plaintiffs
3  allege that Defendants failed to properly file a declaration with
4  their notice of default ... As applied, Plaintiffs' § 2923.5
5  claim concerns the processing and servicing of Plaintiffs'
6  mortgage.  As such, the Court finds that Plaintiffs' 2923.5 claim
7  is preempted under HOLA"); *Odinma v. Aurora Loan Services,* 2010
8  WL 1199886 at *8 (N.D.Cal., March 23, 2010)("Here, Plaintiffs
9  allege that Defendants failed to communicate with Plaintiffs
10 before beginning the foreclosure process ... Defendants claim
11 that the notice requirement imposes a state law mandate about
12 what information must be given to borrowers, and includes a
13 strict time frame for doing so.  Defendant [sic] would not be
14 subject to these requirements in other states.  Therefore,
15 Plaintiffs' Section 2923.5 claim concerns the processing and
16 servicing of Plaintiffs' mortgage and is preempted by HOLA.").

17     Noting that the motion to dismiss is brought by ALS and
18 MERS, Plaintiff responds that there is no competent evidence
19 presented that either defendant is a federal savings association
20 and, therefore, HOLA does not apply to the First Cause of Action.
21 *See Juarez v. Wells Fargo Bank,* 2009 WL 3806325 at *2 (C.D.Cal.,
22 Nov. 11, 2009).  Plaintiff further contends:

23          In this case, the loan was originated by
           defendant Shea Mortgage, Inc.  The only
24          interest Aurora seems to have is by virtue of
           a Notice of Trustee's Deed Upon Sale.
25
26     ALS responds that it is a direct subsidiary of Aurora Bank

16

FSB, a federal savings association.  *See Odinma, supra*, 2010 WL 1199886 at *7, reciting Aurora's argument that, because Defendant is a direct subsidiary of Aurora Bank FSB and citing *State Farm Bank v. Reardon*, 539 F.3d 336, 345 (6th Cir.2008), Plaintiff's claim under Section 2923.5 is preempted.

In *Watters v. Wachovia Bank*, 550 U.S. 1 (2007), a federally chartered bank and its subsidiary, a state-chartered mortgage company, brought suit against the Commissioner of the Michigan Office or Insurance and Financial Services seeking declaratory and injunctive relief from state registration and inspection requirements based on preemption of the National Bank Act.  The Supreme Court held that, under the National Bank Act, a national bank's mortgage business, whether conducted by the bank itself or through the bank's operating subsidiary, is subject to the superintendence of the Office of the Comptroller and not to the licensing, reporting and visitorial regimes of the several states in which the subsidiary operates.  In *State Farm Bank v. Reardon,* the Sixth Circuit, relying on *Watters*, held that OTS's preemption regulation preempted application of the Ohio Mortgage Broker Act to a federal savings association's independent contractors.  539 F.3d at 340-347.  *See also SPGGC, LLC v. Ayotte,* 488 F.3d 525, 530-534 (1st Cir.2007), *cert. denied*, 552 U.S. 1185 (2008)(relying on *Watters* and holding that a New Hampshire law prohibiting the sale of gift cards that carry expiration dates or administrative fees preempted by the National Banking Act even though the gift cards were sold through third party agents.)

17

1    Although the Court has not been requested to take judicial

2  notice of ALS's legal relationship with Aurora Bank, FSB, in

3  *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642

4  F.Supp.2d 1048 (N.D.Cal.2009), the District Court took judicial

5  notice of documents establishing that ALS is a wholly owned

6  subsidiary of Aurora Bank, a federally chartered savings bank.

7  *See also Ibarra v. Loan City,* 2010 WL 415284 at *5

8  (S.D.Cal.2010), and many other cases finding the same.  At the

9  hearing, Plaintiff did not assert that ALS is not the wholly

10  owned subsidiary of Aurora Bank, a federally chartered savings

11  bank.  Because ALS is the subsidiary of Aurora Bank, FSB, the

12  authority cited above negates Plaintiff's argument that HOLA does

13  not apply to ALS.  Because the First Cause of Action is alleged

14  solely against ALS, MERS' status is irrelevant.  Consequently,

15  Plaintiff's argument that ALS is not a federal savings

16  association within the meaning of HOLA is without merit.

17    HOLA preempts Plaintiff's claim based on the alleged

18  violation of Section 2923.5 because the claim concerns the

19  processing and servicing of Plaintiffs' mortgage.[4]

20    Defendants move to dismiss the First Cause of Action to the

21

22    [4]**Because HOLA preempts Plaintiff's Section 2923.5 claim, it is
unnecessary to address the arguments that the Notice of Default
23  complied with the requirements of Section 2923.5; that the
declaration of compliance with Section 2923.5 in the Notice of
24  Default does not satisfy the requirements for an unsworn
declaration in California Code of Civil Procedure § 2015.5; that
25  Plaintiff fails to allege she suffered any prejudice as a result of
the alleged violation of Section 2923.5; and that Plaintiff has not
26  tendered the full balance owing on the loan.**

18

extent it alleges that Defendants "have not provide Plaintiff
with any evidence that they are in physical possession of the
original Note," citing numerous cases holding that there is no
statutory duty is imposed on the trustee or beneficiary to
produce the promissory note before proceeding with a nonjudicial
foreclosure.  *See, e.g., Chilton v. Federal Nat. Mortg. Ass'n*,
2009 WL 5197869 (E.D.Cal., Dec. 23, 2009) and cases cited
therein.

In her opposition, Plaintiff agrees that Defendants do not
have to produce the original promissory note in order to conduct
a non-judicial foreclosure under California Civil Code § 2924.
However, Plaintiff asserts that the parties are bound by the
express provisions of the underlying Deed of Trust, referring to
Exh. A of Defendants' Request for Judicial Notice.  Plaintiff
notes that the Deed of Trust defines the "lender" as Defendant
Shea and the beneficiary as Defendant MERS.  Plaintiff then
refers to Paragraph 22 of the Deed of Trust:

> NON-UNIFORM COVENANTS.  Borrower and Lender
> further covenant and agree as follows:
>
> 22.  Acceleration; Remedies.  Lender shall
> give notice to Borrower prior to acceleration
> following Borrower's breach of any covenant
> or agreement in this Security Instrument ...
> If the default is not cured on or before the
> date specified in the notice, Lender at its
> option may require immediate payment in full
> of all sums secured by this Security
> Instrument without further demand and may
> invoke the power of sale and any other
> remedies permitted by Applicable Law ....
>
> If Lender invokes the power of sale, Lender
> shall execute or cause Trustee to execute a

19

written notice of the occurrence of an event
of default and of Lender's election to cause
the Property to be sold.

Relying on this provision in the Deed of Trust, Plaintiff now argues that only the Lender, Defendant Shea, had to power to cause the Notice of Default to be recorded, not the beneficiary, Defendant MERS.

Defendants note that the Deed of Trust provides that "MERS ... is acting solely as a nominee for Lender and Lender's successors and assigns," and that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS," and that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as the nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property."

*Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1188-1189 (N.D.Cal.2009), involved the identical provisions in the Deed of Trust.  In rejecting the argument that MERS did not have the legal authority to foreclose on the property, the District Court ruled:

Under California law, a 'trustee, mortgagee,
or beneficiary or any of their authorized
agents' may conduct the foreclosure process
and 'a person authorized to record the notice
of default or the notice of sale shall

20

include an agent for the mortgagee or
beneficiary, an agent of the named trustee,
any person designated in an executed
substitution of trustee, or an agent of that
substituted trustee.'   Cal.Civ.Code §§
2924(a)(1), (b)(4).   If the deed of trust
contains an express provision granting a
power of sale, the beneficiary may pursue
nonjudicial foreclosure under the provisions
of § 2924, often called a 'trustee's sale.'
*Ung v. Koehler*, 135 Cal.App.4th 186, 192 ...
(Ct. App.2005); ... *Huene v. Cribb*, 9
Cal.App.141, 143-44 ... (Ct. App.
1908)(providing that a power of sale must be
express in the deed of trust).

...

Plaintiff, in relevant part, alleges as
follows:

MERS is always a nominee and never
the actual holder and possessor of
a promissory note or deed of trust
... It is never an actual
beneficiary ... MERS is essentially
a sophisticated electronic bulletin
board for the recording of mortgage
information ...

Subsequently claiming to be the
beneficiary in the Notice of
Default and the Notice of Trustee
Sale, without a chain of evidence
of its right to do so, has been
MERS [sic] ... Countrywide is now
attempting to foreclose upon the
home of [Plaintiff], listing MERS
as the beneficiary, when it does
not have the legal right to do so
....

Plaintiff's allegations ignore the plain
language of the Deed of Trust.   First, the
Deed of Trust expressly designated MERS as
the nominee of the lender and as the
beneficiary ... Second, Plaintiff distinctly
granted MERS the right to foreclose through
the power of sale provision, giving MERS the
right to conduct the foreclosure process
under Section 2924 ... Pursuant to the terms

21

1      of the Deed of Trust and § 2924, as a
       beneficiary, MERS has a right to conduct the
2      foreclosure process.

3      Plaintiff's new contentions concerning Defendant MERS legal

4  ability to file the Notice of Default are without merit, based on

5  California law and the express provisions in the Deed of Trust.

6  Therefore, leave to amend the First Cause of Action to include

7  these allegations is futile and is denied on that basis.

8      Plaintiff further asserts that the Deed of Trust defines the

9  lender as Shea, MERS as the beneficiary and nominee, and Chicago

10  Title as the trustee.  Plaintiff refers to Defendant Shea's

11  memorandum in support of its motion to dismiss wherein Shea

12  represents that it conveyed its interest to ALS.  Plaintiff

13  asserts that there is no indication in the record how Shea's

14  interest was conveyed to ALS.  Plaintiff contends: "Plaintiff

15  speculates it was by an assignment but counsel was unable to find

16  any recorded documents," citing California Civil Code § 2932.5:

17          Whenever a power to sell real property is
            given to a mortgagee, or other encumbrancer,
18          in an instrument intended to secure the
            payment of money, the power is part of the
19          security and vests in any person who by
            assignment becomes entitled to payment of the
20          money secured by the instrument.  The power
            of sale may be exercised by the assignee if
21          the assignment is duly acknowledged and
            recorded.
22
   In contending that the foreclosure sale is null and void because
23
   it did not comply with the express terms of the Deed of Trust and
24
   statutes, Plaintiff asserts:
25
            On March 17, 2009 a Notice of Default was
26          recorded.  It states that plaintiff should

                               22

contact Aurora to find out the amount to pay,
or arrange for payment to stop the
foreclosure.  There are no documents
evidencing Aurora's role in the Notice of
Default, however there is no indication that
Shea Mortgage Inc. initiated the Notice of
Default as required by the deed of trust.  On
June 22, 2009, a Notice of Trustee Sale is
recorded setting a sale date of July 8, 2009.
Again, the Notice directs the plaintiff to
call Aurora Loan Services.  Again, there is
no indication that Shea Mortgage Inc.
initiated or authorized the Notice of Trustee
Sale as required by the deed of trust.  Based
on the pleading already filed in this case,
Shea states that it never tried to collect
any money from the plaintiff or was involved
with the foreclosure ... Finally, a Trustee's
Deed Upon Sale was recorded on July 15, 2009.
The Deed states 'The grantee herein is the
foreclosing beneficiary.'  This document
states that Aurora Loan Services foreclosed
on the plaintiff's property as the
beneficiary.  There is no evidence indicating
that Aurora acquired a beneficial interest in
the subject property.  Shea Mortgage Inc.
appears to be the only valid beneficiary and
the only one entitled to foreclose.

Plaintiff's arguments that the foreclosure sale was void
because it was not initiated by Shea and there is no recorded
assignment evidencing the transfer of the loan from Shea to ALS
are without merit.   There is no requirement under California law
for an assignment to be recorded in order for an assignee
beneficiary to foreclose.  *See Roque v. Suntrust Mortg., Inc.*,
2010 WL 546896 at *3-5 (N.D.Cal., Feb. 10, 2010):

A.  Declaratory Relief.

... Plaintiff argues a second theory, that
under California Civil Code § 2932.5, because
the chain of ownership is unrecorded, the
power of sale in the deed of trust is no
longer valid ....

23

California law recognizes two distinct ways in which a loan may be secured by real property, either by a mortgage or by a deed of trust. *Yulaeva v. Greenpoint Mortg. Funding, Inc.,* 2009 WL 2880393, 1 (E.D.Cal., Sept. 3, 2009).  A deed of trust generally involves three parties, the borrower/trustor (in this case Roque) who conveys the right to sell the property to the trustee, for the benefit of the lender/beneficiary. *Id.*  The practical effect is the creation of a lien on the subject property. *Id.*  Notwithstanding that the right of sale is formally with the trustee, both the beneficiary and the trustee may commence the non-judicial foreclosure process. *Id.* (citing Cal.Code.Civ.Proc. § 725a).

Section 2923.5 applies to mortgages, not deeds of trust.  It applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee.  Trustees regularly foreclose on behalf of assignees for the original beneficiary. *In re Golden Plan of Cal., Inc.,* 829 F.2d at 708-77.  Accordingly, plaintiff's theory under § 2932.5 fails.  As the court previously concluded, non-judicial foreclosures are governed exclusively by Cal.Civ.Code Section 2924-2924i.

...

B.  Wrongful Foreclosure

Plaintiff next raises a claim for wrongful foreclosure against only MERS, GMAC and Deustche Bank.  According to plaintiff, defendants Deustche Bank, MERS and GMAC were not the proper parties to authorize, initiate and conduct the foreclosure sale ...  Plaintiff alleges that the notice of default only provides contact information for MERS care of ETS Service, LLC ...  Plaintiff appears to be making an argument that because ETS is neither the mortgagee or the beneficiary, plaintiff is being deprived of the right to know the beneficiary making the foreclosure wrongful ....

An analysis of wrongful foreclosure begins

24

with the question of whether the notice of
default was defective.  Section 2924 sets
forth the requirements for notices of
default, including that they contain (a) a
statement identifying the mortgage or deed of
trust by stating the name or names of the
trustor or trustors and giving the book and
page, or instrument number, if applicable,
where the mortgage or deed of trust is
recorded or a description of the mortgaged or
trust property; (b) a statement that a breach
of the obligation for which the mortgage or
transfer in trust is security has occurred;
(c) a statement setting forth the nature of
each breach actually known to the
beneficiary; and (4) his or her election to
sell or cause to be sold the property to
satisfy that obligation and any other
obligation secured by the deed of trust or
mortgage that is in default.  Cal. Civ. Code
§ 2924(a)(1)(A)-(C).  The notice of default
provides notice to plaintiff, along with the
required statement identifying the mortgage,
stating the breach has occurred along with
the nature of the breach.  TAC Ex. E.  The
declaration further provides a statement
regarding the beneficiary's election to sell
or cause to be sold the property to satisfy
the obligation ... The information appears
complete, and, plaintiff fails to allege
facts showing that the notice of default was
defective.

Plaintiff's allegations fail to specify the
subsection of 2924 that defendants allegedly
violated.  Plaintiff makes the broad
generalization that defendants violated
section 2924 through 2924(k) ... Plaintiff
raises the argument that no proper chain of
assignment of the note can be demonstrated
and therefore the foreclosure is improper and
fails to meet the requirements of section
2924 ... According to plaintiff, any
substitution of trustee was null and void and
therefore the foreclosure proceedings were
defective and wrongful ....

...

Plaintiff's claim for wrongful foreclosure
rests on his assertion that defendants

25

wrongfully conducted the foreclosure of the Property.  However, '[a]n action for the tort of wrongful foreclosure will lie [only] if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale.'  *Collins v. Union Federal Sav. & Loan Ass'n*, 99 Nev. 282, 662 P.2d 610, 623 (Nev.1983).  However, plaintiff is unable to assert that no breach of performance occurred.  Without such an assertion plaintiff is unable to raise a wrongful foreclosure claim ... Therefore, plaintiff fails to meet his burden in pleading a claim for wrongful foreclosure, and the presumption is that defendants had the right to foreclose.  *Ernestberg v. Mortgage Investors Group,* 2009 WL 160241, 6 (D.Nev.2009).

Defendants GMAC and MERS also argue that the claim cannot apply to them because neither was involved as the original lenders.  GMAC was only a servicer and MERS only a former beneficiary under the Deed of Trust ... As discussed above, in a deed of trust, the beneficiary has the right to instigate non-judicial foreclosure.  It makes no difference that it may be unclear who gave authority to record the Notice of Default.  There appears to be no requirement under Section 2924 that the actual beneficiary step forward and be known.  In the absence of any legal requirement with respect to the possession of the original promissory note prior to a nonjudicial foreclosure, plaintiff's theory for wrongful foreclosure is without merit.

The First Cause of Action for Declaratory Relief is DISMISSED WITH PREJUDICE.

D.   <u>SECOND CAUSE OF ACTION</u>.

The Second Cause of Action is for injunctive relief against Defendant ALS, alleging that ALS is attempting to take possession

26

of the subject property, which will cause Plaintiff "great and irreparable injury in that real property is unique," that, unless enjoined, ALS's wrongful conduct will cause great and irreparable harm to Plaintiff because she will lose her real property; and Plaintiff has no plain, adequate or speedy remedy to prevent irreparable loss to Plaintiff "because real property is inherently unique and it is and will be impossible for Plaintiffs [sic] to determine the precise amount of damage Plaintiffs [sic] will suffer."

Defendants move to dismiss the Second Cause of Action for injunctive relief.

First, Defendants note that "[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168 (1942); *see also McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997); *Lomboy v. SCME Mortg. Bankers*, 2009 WL 1457738 at *7 (N.D.Cal., May 26, 2009).

Defendants assert that it is unclear what Plaintiff is attempting to enjoin. As noted, the Subject Property has been foreclosed. Paragraph 37 alleges that "ALS is attempting to take possession of [the Subject Property]." Surmising that Plaintiff may be attempting to enjoin an unlawful detainer proceeding brought in state court to obtain possession of the Subject Property, Defendants contend that such a claim would be barred by the Anti-Injunction Act, 28 U.S.C. § 2283:

A court of the United States may not grant an

> injunction to stay proceedings in a State
> court except as expressly authorized by Act
> of Congress, or where necessary in aid of its
> jurisdiction, or to protect or effectuate its
> judgments.

Defendants note that the FAC alleges no facts that  fall within

any of these three exceptions and, accordingly, the Court cannot

enjoin any unlawful detainer proceeding that may be proceeding in

state court.

At the hearing, Plaintiff conceded that dismissal of the

First Cause of Action negates the Second Cause of Action for

injunctive relief.

The Second Cause of Action is DISMISSED WITH PREJUDICE.

E.   <u>THIRD CAUSE OF ACTION</u>.

The Third Cause of Action is captioned "Truth in Lending Act

Violations" and alleges:

> 41.   Plaintiffs [sic] alleged [sic] that
> SHEA, at all times relevant hereto, regularly
> extended or offered to extend consumer credit
> for which a finance charge is or may be
> imposed and that SHEA is a creditor within
> the meaning of the Truth-in-Lending Act
> (TILA).
>
> 42.   The underlying Property transaction
> constitutes a consumer credit transaction
> within the meaning of TILA.
>
> 43.   Plaintiff is a consumer within the
> meaning of TILA.
>
> 44.   Plaintiff asserts this cause of action
> as set-off in response to Defendants [sic]
> foreclosure of her interest in [the Subject
> Property].  As such plaintiff is not barred
> by the statute of limitations.
>
> 45.   As set forth above [sic], SHEA violated
> the TILA by:

28

a.  By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 USC § 1638(b), and Regulation Z § 226.17(b).

b.  By failing to make required disclosures clearly and conspicuously in writing in violation of 15 USC § 1632(a) and Regulation Z § 226.18(m).

c.  By improperly calculating the finance charges, and double billing the finance charges and costs.

d.  By charging fees and costs and finance charges not actually incurred or previously paid.

f. [sic] By miscalculating the APR based on improperly charged, calculated, and disclosed finance charges.

46.  By reasons of the above violations, SHEA is liable to Plaintiff for twice the amount of finance charges, actual damages to be established at trial, attorneys fees and costs.

47.  SHEA, ALS and MERS contends [sic] the first loan is still due and owing, while Plaintiffs [sic] believes is properly rescinded [sic].

48.  Plaintiffs [sic] allege that they [sic] have and are entitled to rescind the loan transaction, pursuant to TILA since such loans were consumer credit transaction within the meaning of that statutes [sic], and SHEA violated TILA.  In addition to the allegations set forth and incorporated herein, by failing to deliver all material disclosures, by failing to accurately disclose the amount financed, by failing to accurately disclose the finance charge, by failing to disclose the annual percentage rate.

49.  Plaintiff alleges that by at least as early as the commencement of the state court action, SHEA, ALS and MERS were aware that Plaintiffs [sic] desired to exercise their

29

[sic] rescission rights.

50.  More than twenty days have lapsed and SHEA, ALS and MERS have not taken any action to rescind.

51.  SHEA, ALS and MERS has [sic] failed to return any money or property to Plaintiff.

52.  As a result of the aforesaid violations, SHEA is liable to Plaintiff for:

a) Rescission of the loan transactions [sic];

b) Termination of any security interest in Plaintiff's property created under the loan transaction;

c) Return of any money or property given by Plaintiff to anyone, including SHEA, in connection with the transaction;

d) Statutory damages of $2,000 for the disclosure violations;

e) Statutory damages of $2,000 for SHEA's failure to respond properly to Plaintiff's request for rescission;

f) Forfeiture of the loan proceeds;

g) Actual damages in an amount to be determined at trial;

h) Reasonable attorneys [sic]; and for such other relief as hereinafter set forth.

Defendants move to dismiss the Third Cause of Action for violation of TILA as barred as a matter of law.

1.  <u>Purchase Money Loan</u>.

Defendants move to dismiss on the ground that Plaintiff cannot rescind a purchase money loan.  Regulation Z, which implements TILA, states that "[t]he right to rescind does not apply to ... a residential mortgage transaction."  12 C.F.R. §

30

226.15(f).   Regulation Z defines a residential mortgage
transaction as "a transaction in which a mortgage, deed of trust,
purchase money security interest arising under an installment
sales contract, or equivalent consensual security interest is
created or retained in the consumer's principal dwelling to
finance the acquisition or initial construction of that
dwelling."   12 C.F.R. § 226.2(a)(24).

Defendants note that the Deed of Trust was recorded on
December 1, 2006 and secured a $462,550 loan from Defendant Shea.
Also recorded on December 1, 2006 was the Grant Deed vesting
title to the Subject Property in Plaintiff.   Defendants assert:

> The fact that these documents were recorded
> on the same day, in the same county
> recorder's office only a few documents apart
> demonstrates that the loan was used to enable
> Plaintiff to purchase the Subject Property.
> Accordingly, this is a residential mortgage
> transaction and, thus, under 15 U.S.C. §
> 1632(e)(1), even if there was a violation of
> TILA, there is no right to rescission.

Plaintiff responded in her opposition brief that the FAC is
silent on what type of loan Plaintiff received and, thus, she is
unable to respond whether the underlying loan was a residential
mortgage transaction.   At the hearing, Plaintiff's counsel stated
that he did not know the purpose of the loan when he filed this
action but has since spoken to Plaintiff and concedes that the
loan was a "residential mortgage transaction" within the meaning
of Regulation Z.   The statement in the opposition brief and
Counsel's representation at the hearing are disingenuous given
the allegations in Paragraphs 21 and 23 of the FAC.   Nonetheless,

31

1  given Plaintiff's concession, the Third Cause of Action is

2  DISMISSED WITH PREJUDICE to the extent it seeks rescission under

3  TILA.[5]

4           2.  <u>Right to Rescind Expired</u>.

5       Assuming arguendo that Plaintiff has a rescission right

6  under TILA, Defendants argue that the rescission right expired

7  when the property was sold at foreclosure on July 8, 2009.

8  *See Ibarra v. Loan City,* 2010 WL 415284 at *7 (S.D.Cal., Jan. 27,

9  2010):

10            [P]ursuant to Section 1635(f), Plaintiff's
             right to rescind expired on September 8, 2009
11            when the Property was sold at the trustee's
             sale, and Plaintiff does not allege the
12            Complaint was served on Aurora before the
             foreclosure sale took place.  Section 1635(f)
13            provides that the right of rescission expires
             at the latest, 'three years after the date of
14            consummation of the transaction or upon the
             sale of the property, whichever occurs
15            first.'

16  *See also Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176,

17  1183 (D.Or.2005).

18       Plaintiff responds that Section 1635(f) does not apply when

19  the validity of the foreclosure sale is in dispute, citing *Young*

20  *v. 1st American Financial Services*, 977 F.Supp. 38, 39

21  (D.D.C.1997)(denying motion to dismiss TILA rescission claim when

22  validity of foreclosure sale under local law in dispute).

23  Plaintiff, citing *Lancaster Sec. Inv. Corp. v. Kessler*, 159

24  _____

25       [5]This conclusion makes unnecessary resolution of Defendants'
    alternative contention that Plaintiff's right of rescission under
    TILA expired when the Subject Property was sold at foreclosure on
26  July 8, 2009.

Cal.App.2d 649, 652 (1958), asserts:

> Under California law, the only requirements
> of notice of sale essential to the validity
> of a sale under a power contained in a deed
> of trust are those expressly and specifically
> prescribed by the terms of the instrument and
> by the provisions of the applicable statutes.

2.   <u>Claim for Damages Time-Barred</u>.

Defendants move to dismiss Plaintiff's claim for damages under TILA as time-barred.

A plaintiff seeking damages under TILA must file suit within one year of the date of the alleged violation.  15 U.S.C. § 1640(e).  As stated in *Meyer v. Ameriquest Mortg. Co.,* 342 F.3d 899, 902 (9th Cir.2003):

> The failure to make the required disclosures
> occurred, if at all, at the time the loan
> documents were signed.  The Meyers were in
> full possession of all information relevant
> to the discovery of a TILA violation and a §
> 1640(a) damages claim on the day the loan
> papers were signed.  The Meyers have produced
> no evidence of undisclosed credit terms, or
> of fraudulent concealment or other action on
> the part of Ameriquest that prevented the
> Meyers from discovering their claim.

Plaintiff responds that her TILA claim is pled defensively to reduce or set-off the amount she owes Defendant and alleges that the TILA violation and the creditor's debt arose from the same transaction.  Therefore, she asserts, the one year statute of limitations is not applicable.

Plaintiff's contention is without merit.  15 U.S.C. § 1640(e) provides in relevant part:

> This subsection does not bar a person from
> asserting a violation of this subchapter in

33

> an action to collect the debt which was
> brought more than one year from the date of
> the occurrence of the violation as a matter
> of defense by recoupment or set-off in such
> action, except as otherwise provided by State
> law.

In *Carillo v. CitiMortgage, Inc.,* 2009 WL 3233534 at *3

(C.D.Cal., Sept. 30, 2009), the District Court held:

> CITI also argues that Plaintiffs cannot state
> a cause of action under TILA's recoupment
> exception.  The one year statute of
> limitations does not apply to recoupment or
> set-off claims that are asserted as a defense
> to 'an action to collect debt.'  15 U.S.C. §
> 1640(e).  In paragraph 11 of the Complaint,
> Plaintiffs purport to assert recoupment
> defensively in response to a non-judicial
> foreclosure proceeding.  An foreclosure
> action is not an 'action to collect debt'
> within the meaning of the recoupment
> exception.  Plaintiff's affirmative use of
> the recoupment claim is improper and exceeds
> the scope of the TILA exception.

See also *Lyman v. Loan Correspondents, Inc.,* 2009 WL 3757398 at

*2 (C.D.Cal., Nov. 6, 2009):

> However, 'non-judicial foreclosures are not
> "actions " as contemplated by TILA.'  *Ortiz
> v. Accredited Home Lenders, Inc.*, 639
> F.Supp.2d 1159, 1159 (S.D.Cal.2009).  Both §
> 1640(e) and California law define an action
> in this context as a court proceeding.  *Id.*
> Because Loan Correspondents has not brought
> an action against the Lymans in court, the
> Lymans' 'affirmative use of the claim is
> improper and exceeds the scope of the TILA
> exception.' *Id.* (quoting *Amaro v. Option One
> Mortgage Corp.*, 2009 WL 103302, at *3
> (C.D.Cal., Jan. 14, 2009.

See also *Horton v. California Credit Corp.*, 2009 WL 2488031 at

*11 (S.D.Cal.2009)("Because Defendant has not brought any

judicial 'action to collect a debt,' Plaintiffs' recoupment claim

has not properly been asserted as a defense."); *Lima v. Wachovia Mortg. Corp.,* 2010 WL 1223234 at *6 (N.D.Cal., March 25, 2010)("Since Lima's lawsuit is not a defensive action, she cannot bypass the one-year statute of limitations by treating her claim as a recoupment defense").

The Third Cause of Action is DISMISSED WITH PREJUDICE to the extent it seeks damages for the alleged violations of TILA.

F.   <u>FOURTH CAUSE OF ACTION</u>.

The Fourth Cause of Action is captioned "Cancellation of Instrument" and alleges:

> 54.  A written instrument that purports to be a Deed of Trust executed by plaintiff is presently in existence and under ALS's control.
>
> 55.  The instrument, although apparently valid on its face, is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.
>
> 56.  As a result, any obligation owed by PARCRAY to ALS is not secured by the underlying real property.
>
> 57.  By this complaint, plaintiffs [sic] notify ALS of plaintiff's intent to cancel the deed of trust attached as Exhibit A.

Defendants move to dismiss the Fourth Cause of Action for cancellation of legal instrument.

Defendants assert that the allegation that there is "no enforceable underlying promissory note for the deed of trust to secure" is conclusory and contradicted by the allegation in Paragraphs 5 and 19 that "Plaintiff purportedly entered into a loan repayment and security agreement on or about December 1,

2006 with Defendant SHEA ..., which required Plaintiff to repay a loan of $462,550.00 to SHEA" and "Plaintiff is willing and able to tender the face value of the note minus equitable set off to the true holder of the underlying promissory note whom plaintiff believes to be Shea Mortgage."

It is apparent that Plaintiff's allegation in the Fourth Cause of Action is based on the premise that the original promissory note must be produced before a non-judicial foreclosure can proceed. As noted, Plaintiff now concedes that this contention is without legal merit. *See, e.g., Chilton v. Federal Nat. Mortg. Ass'n*, 2009 WL 5197869 (E.D.Cal., Dec. 23, 2009) and cases cited therein.

California Civil Code § 3412 provides:

> A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or cancelled.

Defendants assert that the FAC fails to establish that the Deed of Trust is void or voidable, or that the Deed of Trust must be cancelled to avoid serious injury to Plaintiff. The foreclosure sale occurred on July 8, 2009, before this action was commenced. Therefore, Defendants contend, Plaintiff is no longer obligated to make payments under the promissory note or Deed of Trust. In addition, in order to cancel a voidable instrument, Plaintiff must restore to the beneficiary the amounts she borrowed pursuant to the promissory note and Deed of Trust. *See Star Pacific*

1   *Investments, Inc. v. Oro Hills Ranch, Inc.*, 121 Cal.App.3d 447,

2   457 (1981).  Defendants assert that Plaintiff has not repaid or

3   offered to repay the amount loaned.  *See discussion supra.*

4       The Fourth Cause of Action is DISMISSED WITH LEAVE TO AMEND

5   to state equitable or legal grounds for the claim for

6   cancellation of instrument within the purview of Rule 11, Federal

7   Rules of Civil Procedure.  If Plaintiff proceeds to amend the

8   Fourth Cause of Action, Plaintiff must allege the tender of the

9   loan amount or the present ability to tender the loan amount.

10  <u>CONCLUSION</u>

11      For the reasons stated:

12      1.  Defendants' motions to dismiss are GRANTED WITH

13  PREJUDICE as to the First, Second and Third Causes of Action and

14  WITH LEAVE TO AMEND as to the Fourth Cause of Action;

15      2.  Plaintiff shall file a Second Amended Complaint within

16  fifteen (15) days of electronic service of this Memorandum

17  Decision and Order.  Failure to timely comply will result in the

18  dismissal of this action.  If the Second Amended Complaint is

19  timely filed, Defendants shall respond within fifteen (15) days

20  thereafter.

21  IT IS SO ORDERED.

22  **Dated:   April 23, 2010**        **_____/s/ Oliver W. Wanger_____**
                         UNITED STATES DISTRICT JUDGE

23

24

25

26